UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHIVA STEIN,

       Plaintiff,

v.

CAI INTERNATIONAL, INC., DAVID G. REMINGTON, KATHRYN JACKSON, GARY M. SAWKA, ANDREW OGAWA, TIMOTHY PAGE, and JOHN WILLIFORD,

       Defendants.

---

Civil Action No. 1:21-cv-6034

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against CAI International, Inc. ("CAI or the "Company") and the members CAI board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of CAI by Mitsubishi HC Capital Inc., a Japanese corporation ("Mitsubishi") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 12, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cattleya Acquisition Corp., a Delaware corporation and a wholly-owned subsidiary of Mitsubishi ("Merger Sub"), will merge with and into CAI with CAI surviving the merger and becoming a wholly-owned subsidiary of Mitsubishi (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each CAI common share issued and outstanding will be converted into the right to receive $56.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked CAI stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Centerview Partners LLC ("Centerview") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CAI stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor and legal advisors of CAI are headquartered in this District. CAI is listed on the New York Stock Exchange, which is also headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CAI common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant David G. Remington has served as a member of the Board since 2010 and is Chairman of the Board.

11. Individual Defendant Kathryn Jackson has served as a member of the Board since 2018.

12. Individual Defendant Gary M. Sawka has served as a member of the Board since 2011.

13. Individual Defendant Andrew Ogawa has served as a member of the Board since 2018.

14. Individual Defendant Timothy Page has served as a member of the Board since 2020 and is the Interim President and Chief Executive Officer.

15. Individual Defendant John Williford has served as a member of the Board since 2018.

16. Defendant CAI is incorporated in Delaware and maintains its principal offices at Steuart Tower, 1 Market Plaza, Suite 2400, San Francisco, California 94105. The Company's common stock trades on the New York Stock Exchange under the symbol "CAI."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.      The Proposed Transaction**

19. CAI operates as a transportation finance company in the United States, Switzerland, France, Korea, Singapore, rest of Asia, rest of Europe, and internationally. The Company leases, re-leases, and disposes equipment; and contracts for the repair, repositioning, and storage of equipment. It leases its container equipment to lessees under long-term, short-term, and finance leases. The Company also sells containers; and manages equipment for to third-party investors, as well as sells used containers. As of December 31, 2020, it had a container fleet comprised 1,798,520 cost equivalent units. The Company was formerly known as Container Applications International, Inc. and changed its name to CAI International, Inc. in February 2007. CAI was incorporated in 1989 and is headquartered in San Francisco, California.

20. On June 17, 2021, CAI announced that it had entered into the Proposed Transaction with Mitsubishi:

> SAN FRANCISCO--(BUSINESS WIRE)--CAI International, Inc. (NYSE: CAI) ("CAI" or the "Company"), one of the world's leading transportation finance companies, announced today that it has entered into a definitive agreement to be acquired by Mitsubishi HC Capital Inc. ("MHC"). Under the terms of the merger agreement with MHC (the "Merger Agreement"), MHC will acquire all of CAI's outstanding and fully diluted common stock in an all-cash transaction for $56.00 per share, which represents a total equity value of approximately $1.1 billion, consisting of $104 million (par value) of preferred stock and $986 million of common stock equity value, assuming a fully-diluted share count of 17.6 million based on the treasury stock method, and an enterprise value of $2.9 billion, based on balance sheet information included in the Company's most recent Quarterly Report on Form 10-Q as of March 31, 2021.
>
> David Remington, Chairman of the CAI Board of Directors commented, "After a review of strategic alternatives by our Board of Directors, we are pleased to reach this agreement with MHC, which we believe is in the long-term best interests of our shareholders. This merger is the culmination of discussions that started in Fall of 2019. During those discussions we have been most impressed by the vision of MHC, a vision shared by Hiromitsu Ogawa, who founded CAI over 30 years ago. Mr. Ogawa built a world class container leasing company by focusing on delivering value to customers and we are pleased that this vision will endure. We believe our shipping line customers and manufacturing partners will most certainly benefit from the scale and financial strength of the merged company."
>
> The cash consideration of $56.00 per share of common stock represents a 46.8% premium over CAI's closing stock price today, June 17, 2021, and a 31.3% premium over the volume weighted average share price during the 60 trading days ended June 17, 2021. Holders of the Company's Series A and Series B preferred stock will receive cash equal to $25.00 per share of preferred stock plus all accrued and unpaid dividends as of the date the merger is consummated.
>
> CAI's Board of Directors has unanimously approved the transaction. The transaction, which is currently expected to close in the late third quarter or early fourth quarter of 2021, is subject to customary closing conditions, including approval by CAI's

stockholders, and receipt of certain regulatory and lender approvals, as well as the migration of the jurisdiction of certain of the Company's subsidiaries to the United States. The transaction is not contingent on receipt of financing by MHC.

CAI will continue to pay quarterly non-pro-rated dividends at $0.30 per share per quarter until the closing of the transaction. Following the closing, shares of capital stock of CAI will no longer be listed on the New York Stock Exchange.

The Board of Directors has also unanimously voted to promote Timothy Page from Interim President and Chief Executive Officer to President and Chief Executive Officer.

Timothy Page, President and Chief Executive Officer of CAI remarked, "Over the past year, we have delivered on the commitment we made to our shareholders to return CAI's focus to its core container leasing business. Executing on that strategy put CAI in position to partner with MHC, a strong, quality, global financial organization. Going forward, the combination of CAI and MHC will allow MHC to leverage CAI's global marketing and operational expertise, and along with MHC's existing container investments will provide enhanced value to MHC's container leasing customers, suppliers, employees, and other stakeholders. After the closing of the transaction, MHC expects to retain CAI's existing management team and employees. CAI's headquarters will remain in San Francisco."

Given the pending transaction, CAI will not host a second quarter earnings call and will not release its second quarter financial results for the period ended June 30, 2021, until CAI files its second quarter Quarterly Report on Form 10-Q.

Centerview Partners LLC is acting as the exclusive financial advisor to CAI, and Perkins Coie LLP is acting as CAI's legal advisor.

\* \* \*

21.  The Board has unanimously approved the Proposed Transaction. It is therefore imperative that CAI's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

22.     On July 12, 2021, CAI filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning CAI Financial Projections*

23.     The Proxy Statement fails to provide material information concerning financial projections by CAI management and relied upon by Centerview in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that CAI management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24.     For the Company Projections, the Proxy Statement states the following:

> EBIT, EBIT Margin Percentage and EBITDA (each as defined below) contained in the management projections set forth below are non-GAAP financial measures, which are financial performance measures that are not calculated in accordance with GAAP. These non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures and may be different from similarly titled non-GAAP financial measures used by other companies, which limits their usefulness as a comparative measure. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude charges and credits that are required to be included in a GAAP presentation. The items excluded from net income to arrive at these non-GAAP financial measures are significant components for understanding and assessing the Company's financial performance and liquidity. Accordingly, these non-GAAP financial measures should be considered together with, and not as alternatives to, financial measures prepared in accordance with GAAP.

25.     However, the Proxy Statement fails to actually disclose the measures EBIT, EBIT Margin Percentage, and EBITDA, rendering the entire section regarding the Company Projections false and misleading.

26.     The Proxy Statement does provide values for the non-GAAP metric of After-Tax Levered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of this non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide the financial measures EBIT, EBIT Margin Percentage, and EBITDA, along with a reconciliation table of all non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

30. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Centerview in the analysis; (ii) the inputs and assumptions underlying the P/BV reference range of 1.25x to 1.45x; and (iii) the Company's first quarter 2021 book value and deferred tax liabilities.

31. With respect to Centerview's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the range of illustrative terminal values for the Company;

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

(ii) the inputs and assumptions underlying the use of terminal price to next twelve month earnings multiples ranging from 6.0x to 8.0x terminal year net income; (iii) the inputs and assumptions underlying the range of discount rates ranging from 10.0% to 12.5%; (iv) the range of illustrative equity values for the Company; and (v) the number of fully-diluted outstanding shares of common stock as of March 31, 2021.

32. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Centerview and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of CAI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of CAI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CAI, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CAI, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: 2021

**MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*